## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BILLIE JO RICHARDS,                  :
                                     :          4:08-CV-01947
                    Plaintiff,       :
          v.                         :          (Judge McClure)
                                     :
CENTRE AREA                          :
TRANSPORTATION                       :
AUTHORITY,                           :
                                     :
                    Defendant.       :

## M E M O R A N D U M

### January 25, 2010

## I. BACKGROUND

On October 24, 2008, plaintiff Billie Jo Richards instituted this civil action

against defendant, Centre Area Transportation Authority ("CATA").  In her

complaint, Richards alleges that her employment was terminated by CATA in

retaliation for her filing a complaint in federal court against CATA for sexual

harassment in violation of Title VII of the Civil Rights Act of 1964 and the

Pennsylvania Human Relations Act ("PHRA").

CATA asserts that it has not retaliated against Richards.  First, CATA

contends that Richards has failed to demonstrate a prima facie case of retaliation in

the instant case.  Second, even if Richards has in fact demonstrated a prima facie

case of retaliation, CATA argues that it has proven a legitimate, non-

discriminatory reason for its termination of Richards' employment. Third, CATA asserts that Richards is unable to prove that CATA's proffered legitimate, non-discriminatory reason for terminating her employment was pretext. In the alternative, CATA contends that Richards should not be entitled to attorney's fees or punitive damages.

## II. PROCEDURAL HISTORY

After Richards filed her federal complaint in the instant matter, CATA filed a "Motion to Dismiss Pursuant to F.R.C.P. No. 12(b)(6)" on December 5, 2008. (Rec. Doc. No. 5). Briefs supporting and opposing the motion to dismiss were filed on December 5, 2008, and December 18, 2008, respectively. (Rec. Doc. Nos. 6 and 7). A reply brief was filed on January 5, 2009. (Rec. Doc. No. 8). On March 3, 2009, this Court denied CATA's "Motion to Dismiss Pursuant to F.R.C.P. No. 12(b)(6)." (Rec. Doc. No. 12). On March 6, 2009, this Court ordered the referral of the case to a mediator, as the case was subject to mandatory mediation. (Rec. Doc. No. 13). Mediation, however, was unsuccessful, as the parties were unable to reach a settlement. (Rec. Doc. No. 17).

CATA, on March 23, 2009, filed an answer to Richards' complaint. (Rec. Doc. No. 14). On September 29, 2009, CATA filed a "Motion for Summary Judgment Pursuant to F.R.C.P. No. 56" and a supporting brief. (Rec. Doc. Nos. 18

and 19).  CATA also filed a statement of material facts, as required by Middle

District Local Rule 56.1.  (Rec. Doc. No. 20).  On October 14, 2009, Richards filed

a brief opposing the defendant's motion for summary judgment and her own

statement of material facts.  (Rec. Doc. Nos. 22 and 23).  CATA did not file a reply

brief.

In light of the above, the matter is ripe for disposition.  Now, for the

following reasons, we will grant CATA's motion for summary judgment.

## III.  STATEMENT OF MATERIAL FACTS

The facts of record, viewed in a light most favorable to Ms. Richards, the

non-moving party, are as follows.  Richards began her employment with CATA in

early October 1989.  During this employment, Richards worked as a bus operator

and was a member of AFSCME, AFL-CIO, District Council 83, Local 1203-B.

Richards reported a sexual harassment claim on April 12, 2001, later filing a

Pennsylvania Human Relations Commission complaint on June 1, 2001.

Because of a verbal outburst made by Richards against one of her

supervisors on or about April of 2004, Richards was disciplined, later returning to

work on May 28, 2004.  In November of 2004, Richards was involved in further

inappropriate conduct, which included workplace threats and inappropriate

comments over the radio.  As a result, CATA undertook a second investigation,

which was concluded in early December of 2004.  CATA reprimanded Richards

for the conduct, advising her that similar conduct in the future would be

disciplined.  Richards' union did not dispute the reprimand.  By a letter dated July

27, 2006, CATA informed Richards that, based on an incident that had occurred on

July 24, 2006, there was "possible cause for disciplinary action . . . ."  (Rec. Doc.

No. 20, Exhibit 8).  At least two CATA employees, in January and September of

2006, filed complaints concerning "violent outbursts" by Richards against her

fellow workers.

Apparently, such conduct on the part of Richards had escalated by the spring

of 2007, and CATA took steps pursuant to its Collective Bargaining Agreement

("CBA") to terminate Richards' employment on or about June 7, 2007.  Pursuant

to CATA's CBA, CATA is entitled to consider, for the purposing of disciplinary

action, misconduct that occurred within a preceding 18 month period.  In addition,

CATA has an anti-discrimination policy in place; this policy prohibits retaliation

on the part of CATA if the employee is engaged in a protected activity.

CATA contends that termination of Richards' employment was the result of

her continued inappropriate conduct as a CATA employee; on the other hand,

Richards contends that her employment was terminated because of her filing of a

federal complaint against CATA on May 31, 2007.  Richards also notes that she

was suspended by CATA on May 25, 2007, one day after she says CATA became aware of her intent to file the federal complaint. While CATA claims that Richards' conduct violated "policies relative to customer service, professional performance and other work rules," Richards contends that CATA failed to conduct an adequate investigation into Richards' actual conduct. (Rec. Doc. No. 20 at 4). CATA reiterates that it followed its CBA and "progressive disciplinary requirements." Id. However, Richards contends that the evidence in the record supports an inference that the termination was actually an act of retaliation and that CATA is simply using Richards' prior conduct as pretext for its real reason for firing her, namely her filing of a federal complaint against CATA on May 31, 2007.

Shortly after Richards' employment with CATA was terminated, Richards' union labor representative filed a grievance on her behalf contending that she was fired without just cause. An "internal grievance hearing" was held on June 19, 2007, at which a CATA general manager considered the investigatory evidence and Richards' testimony. Id. at 5. Richards was represented at the meeting, and the CATA union requested arbitration on behalf of Richards.

Arbitration was conducted before a neutral arbitrator on or about October 19, 2007. This neutral arbitrator heard testimony from the plaintiff, two witnesses

by deposition, and CATA administrative staff. The neutral arbitrator denied the grievance appeal on December 21, 2007, upholding Richards' termination.

Three events are relevant to the instant matter, and each is discussed below. These events concern Richards' conduct that occurred during the 18 month period leading up to the termination of her employment.

## A. The April 13, 2007 Incident

A co-worker of Richards filed a discrimination complaint against Richards on April 13, 2007, with CATA's human relations department. In the complaint, the worker alleged that Richards "was swearing and yelling about the people at CATA and about her lawsuit." Id. at 6. CATA claims that its investigation into the event consisted of eleven interviews and, while the plaintiff disputes CATA's contention that it conducted this many interviews, she has failed to cite to the record in her dispute of this claim.[1] However, it is undisputed that the department

---

[1] Middle District Local Rule 56.1 requires that "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements." On more than one occasion, and especially in regard to her statements of material fact concerning the April 13 and May 23, 2007 events, Richards has failed to support her statements of material facts with references to the record. It is not this Court's practice to strike a party's statement of material facts, in whole or in part, or admit the opposing party's statement of material facts wholesale. Instead, in evaluating motions for summary judgment, we glean what useful information we can from the parties' statements of material facts and disavow improper or unsupported entries, or portions thereof. Having reviewed Richards' statement of material facts and found that it facilitates the

of human relations concluded on June 6, 2007 that Richards' actions were

inappropriate, and recommended termination of her employment.  CATA's transit

operations department conducted a separate investigation and review, as did

CATA's operations department, with the operations department reprimanding

Richards in writing for her conduct.  This written reprimand was placed in

Richards' personnel file, and a subsequent letter from the operations department,

dated May 11, 2007, informed Richards of those rules governing "inappropriate

absences."  <u>Id.</u> at 6.

## B.  The May 22, 2007 Incident

CATA contends that, on or about May 22, 2007, an incident allegedly

occurred in which Richards shut a bus door on a rider who had attempted to get off

the bus.  Richards claims, on the other hand, that this incident never occurred, that

she was never interviewed regarding such an incident, and that no witness to the

incident in fact existed.  CATA contends that the incident involved "a verbal

altercation with another patron on the bus which included Richards' making racial

remarks, inappropriate discharge of said passenger from the vehicle, refusal of

passenger transfers and arguments outside of the vehicle with said passenger."  <u>Id.</u>

---

Court's consideration of the instant motion for summary judgment, we will adhere
to our traditional practice.

at 7. Richards disputes all of these contentions, instead noting that CATA's investigation amounted to two phone calls from passengers who were on the bus at the time that the alleged incident occurred.

Richards claims that CATA failed to interview the complaining passengers or conduct background checks of those passengers. However, CATA claims that it conducted interviews of two passengers allegedly involved. CATA also received a complaint from another customer about Richards' conduct and an incident report from an individual named Ryan Lock. Sherry Snyder, an assistant director at CATA, reviewed an incident report that Richards had filed pertaining to the accident, and Snyder eventually drafted an investigation report. On May 25, 2007, Snyder informed Richards that, pending a conclusion of the investigation into the May 22, 2007 incident, Richards would be suspended. As part of her investigation into this incident, Snyder interviewed Richards on May 30, 2007 and obtained from Richards the name of a potential witness to the May 22, 2007 incident. Snyder attempted to contact this witness on multiple occasions, without success.

## C. The May 23, 2007 Incident

On or about May 23, 2007, Richards received her mail at CATA and was appraised of the investigation and possible disciplinary action stemming from the events of the day prior. CATA, pursuant to its confidentiality policy, refused to

divulge to Richards the name of the passenger who was involved in the incident. Upon this refusal, CATA contends that Richards went out to the CATA parking lot, whereupon she took a threatening posture toward a co-worker, using threatening, loud, and profane language. Richards denies any claim that she used loud and profane language, or threatening remarks or body language toward a co-worker. Richards contends that CATA's investigation merely consisted of a interviews of herself and the co-worker.

The co-worker involved in the incident, Cheryl Siraguse, informed her dispatcher-shift supervisor of the encounter with Richards. The incident was memorialized in a shift report that was then reviewed by Snyder. As part of her investigation of the May 23, 2007 incident, Snyder interviewed Siraguse, Richards, and another witness, while also reviewing videotape evidence of the incident. Snyder interviewed several other individuals as well. In her interview, Siraguse stated that Richards confronted her, yelling that "everyone at CATA is f-king psycho," in addition to stating other profane words. Id. at 9. The witness to the incident, though he did not hear what was being said, stated that Richards seemed angry based upon her posture and that Siraguse seem "ready to run away." Id. at 9. In correspondence dated June 6, 2007, Snyder summarized her findings and recommended that Richards' employment be terminated, effective immediately. It

appears as though Richards employment termination was official effective on June 7, 2007, upon action by Hugh Mose, the General Manager at CATA.

As part of Snyder's investigation into the events of May 22 and May 23, 2007, Snyder also considered the events of April 13, 2007, and the May 11, 2007 letter concerning Richards' history of work attendance. Based upon Richards' behavior and conduct reflected in the May 22 and May 23, 2007 events, as well as her behavioral history, Snyder recommended termination. Snyder's June 6, 2007 letter neither references nor acknowledges any discrimination complaint filed by Richards.

Ultimately, General Manager Hugh Mose decided that Richards' employment was to be terminated. CATA claims that this decision was based upon the actions of Richards, including the incidents of April and May 2007. Richards claims that these incidents were merely pretextual and that in fact Richards' employment termination was retaliatory. As part of his decision to terminate Richards, Mose considered the grievance hearing testimony as well as the video of the May 23, 2007 incident. When Mose made his decision, he was aware of Richards' history of both grievances and lawsuits from 2000 to 2007.

CATA claims that it decided to terminate Richards not because of her 2001 harassment claims or because of her 2007 discrimination claims. In addition,

CATA contends that it did not fire Richards because she filed a complaint in federal court against CATA. Instead, CATA claims that it would have fired Richards in light of her actions in April and May of 2007 even if she had not filed a complaint in federal court. On the other hand, Richards claims that her termination was in fact retaliation for her filing a complaint against CATA in federal court.

## IV.  MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when 1) there are no material facts in dispute; and 2) one party is entitled to judgment as a matter of law. See Int'l Union, United Mine Workers of Am. v. Racho Trucking Co., 897 F.2d 1248, 1252 (3d Cir. 1990) (citing Fed. R. Civ. Pro. 56(c)).

A district court may properly grant a motion for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit. Id.; Justofin v. Metropolitan Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).

11

Regardless of who bears the burden of persuasion at trial, the party moving for summary judgment has the burden to show an absence of genuine issues of material fact.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted).  To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must show "'that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'" Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir. 1987)); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  More simply put, a party moving for summary judgment who does not bear the burden of persuasion at trial is not required to negate the nonmovant's claim, but only point out a lack of evidence sufficient to support the nonmovant's claim.  Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1991).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that an issue of material fact remains.  Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party, however, cannot do so by merely offering general denials, vague allegations, or conclusory statements; rather, the

party must point to specific evidence in the record that creates a genuine issue as to a material fact.  Celotex, 477 U.S. at 32; Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## V.  DISCUSSION

Richards claims that she was fired by CATA because she filed a complaint in federal court against CATA for sexual harassment in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA"). Retaliation claims under Title VII proceed in the familiar three stages set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  First, the plaintiff must provide sufficient evidence to establish a prima facie case of discrimination. Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999).  Second, if the plaintiff succeeds in doing so, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Id. (citing McDonnell Douglas Corp., 411 U.S. at 802).  Finally, if the defendant carries this burden, then the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are not true but rather act as mere pretext for the discrimination.  Id. (citation omitted).


### A.  Step One: The Prima Facie Case

13

To establish a prima facie case in a retaliation action, the plaintiff must show the following:

(1) the employee engaged in a protected employee activity;
(2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and
(3) a causal link exists between the employee's protected activity and the employer's adverse action.

Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000).  See also

Kachmar v. Sungard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997); Jalil v.

Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1988).  In the instant matter, there is no

dispute between the parties as to the first two elements.  Here, employee-plaintiff

Richards plainly was engaged in a protected activity, as she had filed a federal

complaint alleging sexual harassment.  Second, it is equally clear that CATA took

an adverse employment action against Richards after or contemporaneous with her

protected activity; within a short period of time after the filing of her complaint,

Richards' employment was terminated.

Therefore, the first issue that must be addressed is whether "a causal link

exists between the employee's protected activity and the employer's adverse

action." Farrell, 206 F.3d at 279.  To meet this element, a plaintiff may rely solely

on evidence of temporal proximity between the filing of the complaint and the

adverse employment action taken against her.  Such may be done as long as the

evidence is "unusually suggestive of retaliatory motive." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 n. 9 (3d Cir. 2003) (citations omitted). In addition to temporal proximity, a plaintiff may also rely on evidence of ongoing antagonism, evidence of other retaliatory acts, or other evidence from the record from which causation may be inferred. See Farrell, 206 F.3d at 281.

In this case, just a few days passed between Richards' filing of her sexual harassment claim and her eventual termination. In fact, the sexual harassment complaint was filed in the United States District Court for the Middle District of Pennsylvania on May 31, 2007, while CATA terminated Richards on or about June 7, 2007. This passage of just a few days between the plaintiff's engaging in a protected activity and her termination, by itself, is unusually suggestive, we believe, of a retaliatory motive. We find that the proximity between Richards' filing of her federal complaint and her employment termination is sufficient to establish causation for the purposes of establishing a prima facie case in a retaliation action. As such, plaintiff has established a prima facie case of causation between her federal complaint concerning sexual harassment and the termination of her employment.


**B.  Step Two: The Employer's Legitimate, Nondiscriminatory Reason**

Upon the plaintiff's making out a prima facie case of discrimination, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Id. (citing McDonnell Douglas Corp., 411 U.S. at 802). In fact, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (U.S. 1981) (citing Board of Trustees v. Sweeney, 439 U.S. 24, 25 (U.S. 1978)). To create a genuine issue of material fact regarding whether it discriminated against a plaintiff, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." Burdine, 450 U.S. at 255. The Third Circuit has referred to this burden as being a light one. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

In the instant case, CATA has pointed to a number of disciplinary actions which it contends formed the basis for its decision to terminate Richards' employment. CATA has noted several events that occurred in April and May of 2007 involving profane language, inappropriate conduct toward a bus rider while Richards was on the job, and threatening conduct toward a co-worker. The evidence pointed to by CATA shows that CATA investigated these matters and took disciplinary action. Eventually, CATA fired Richards.

We conclude that CATA has fulfilled its obligations under the second step in

the <u>McDonnell Douglas</u> framework.  CATA has articulated several legitimate, nondiscriminatory reasons for its firing of Richards.  In fact, at her deposition, Snyder testified that either the May 22 or May 23, 2007 incident would have provided a sufficient basis for firing Richards.  (Rec. Doc. No. 23, Exhibit A, at 69-70).  As such, we will move to the third step of the <u>McDonnell Douglas</u> framework.

## C.  Step Three: Whether the Reasons Proffered by CATA were Pretext

Upon a defendant's articulation of a legitimate, nondiscriminatory basis for its termination of its employee, the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are not true but instead act as mere pretext for the discrimination.  <u>Jones</u>, 198 F.3d at 410 (citations omitted).  To achieve this, the plaintiff must proffer evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." <u>Fuentes</u>, 32 F.3d at 763.

In order to discredit the defendant's proffered reasons, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for

17

its action that a reasonable factfinder *could* rationally find them 'unworthy of credence' . . . and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" Id. at 765 (internal citations omitted) (emphasis included). The Third Circuit has noted that "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108 (3d Cir. 1997) (citing Fuentes, 32 F.3d at 765). The evidence proffered by the plaintiff rebutting the employer's reasons for termination "must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Fuentes, 32 F.3d at 764 (citing Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124 (7th Cir. 1994); Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 958 (5th Cir. 1993)) (internal citations omitted) (emphasis included).

The plaintiff may also adduce evidence showing that it is more likely than not that discrimination was a motivating or determinative cause for the employment action taken. As an example, a plaintiff in Richards' position "may show that the employer has previously discriminated against her, that the employer

18

has discriminated against other persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998) (citing Fuentes, 32 F.3d at 765).

The crux of the plaintiff's basis for arguing that CATA's legitimate, nondiscriminatory reasons for terminating her employment were pretext is founded on the investigative procedures leading up to the disciplinary actions following the April and May 2007 incidents. The plaintiff claims that the investigative procedures surrounding the disciplinary actions for the April and May 2007 incidents were inadequate and, as such, that there remains a genuine issue of material fact as to whether CATA's reasons for Richards' termination were pretext based upon the filing of her federal complaint.

In attempting to create a genuine issue of material fact for the purposes of the instant motion for summary judgment, Richards points to a number of alleged deficiencies in CATA's investigatory process. First, in her brief opposing the defendant's motion for summary judgment, Richards calls into question the ability and effectiveness of the investigator. Richards claims that the investigator was "clearly biased," "not independent," and dismissive of the plaintiff. (Rec. Doc. No. 22 at 5). In addition, Richards claims that the investigator made unfounded

credibility determinations, conducted inadequate investigations into the facts of the incidents, and "made conclusions of misconduct against the Plaintiff which were clearly false." Id. However, Richards fails to cite to any part of the record in support of these assertions.

Richards disputes the thoroughness of CATA's investigations into the April and May 2007 incidents which CATA contends formed its basis for terminating Richards on or about June 7, 2007. First, Richards disputes CATA's contention that it conducted eleven interviews as part of its investigation into the April 13, 2007 incident. However, Richards has failed to point to any evidence in the record that would support her contention.

Second, as to the May 22, 2007 incident, Richards disputes that the incident as described by CATA ever occurred, as well as the thoroughness of the investigation into the incident. Also, while Richards claims that CATA did not personally interview passengers on the bus, Snyder did interview, by telephone, the two complaining passengers. In addition, Richards claims that CATA did not do any background checks on the passengers. While it is true that Snyder did not conduct any criminal background checks on the two complaining passengers, Snyder did testify that she looked into the length of time that the passengers had been in the area, the frequency with which they used the CATA bus system, and

how familiar they would be with that system. In addition, Richards points out that the bus patron upon whom the door allegedly was shut was never interviewed; however, in her deposition, Snyder noted that she did not believe she interviewed the patron, though she also noted that the rider was handicapped and that she "was concerned . . . whether or not [she] could truly rely on the information he was going to provide." (Rec. Doc. No. 23, Exhibit A, at 40).

Third, as to the May 23, 2007 incident, Richards denies having used loud or profane language, threatening remarks or body language. In addition, Richards points out that Snyder only interviewed Richards and her co-worker. However, once again, Richards has failed to make any reference to the record in support of such claims.

In light of the above, Richards claims that a genuine issue of material fact remains to be tried; however, we are constrained to conclude that the plaintiff has failed to show either that CATA's reasons for termination were simply *post hoc* fabrication or were neither a motivating nor determinative cause in her firing. First, Richards has failed to cite to the record concerning several of the facts as stated by CATA, especially in respect to the events of April 13 and May 23, 2007.

Second, and even more importantly, we fail to see how Richards' attacks on CATA's investigatory process create a genuine issue of material fact for the

purposes of the present motion. Richards claims that CATA's investigation into Richards' misconduct was inadequate; however, the investigation took roughly two weeks, from the incidents giving rise to the investigation until Richards' firing, with Snyder interviewing a number of individuals, following up with leads, and documenting the decisional process. The process also included a grievance appeal, which was denied. We fail to see anything on the record indicating that the investigative procedure utilized by CATA in determining whether to terminate Richards was inadequate.

However, even if we were to conclude that the "investigation was faulty or its conclusions were wrong," such a conclusion would not matter at the third step of the McDonnell Douglas framework. Nelson v. DeVry, Inc., 2009 U.S. Dist. LEXIS 38161, *30-31 (E.D. Pa. Apr. 23, 2009). At this step, "pretext is not demonstrated by showing simply that the employer was mistaken." Id. at *30-31. What is important, however, is whether there is evidence in the record that shows that CATA did not act for the reasons it has proffered for firing Richards. Here, Richards has failed to point to any evidence that would create a genuine issue of material fact as to whether CATA's reasons for terminating Richards were simply *post hoc* fabrication or were neither a motivating nor determinative cause in her firing. Richards' complaints concerning CATA's investigative procedures, even

those complaints that are founded upon evidence in the record, fail to show any improper <u>mens</u> <u>rea</u> on the part of CATA; at most, the facts indicate that CATA was mistaken or that CATA potentially could have engaged in a more thorough investigation. However, Richards simply has not pointed to any evidence in the record, except Richards' conclusory allegations, that would support an inference that the reasons proffered by CATA were pretext. As such, we will grant CATA's motion for summary judgment as to Richards' retaliation claim.

### D. Plaintiff's Claim for Punitive Damages and/or Attorney's Fees

In the alternative, CATA has argued that Richards should not be entitled to attorney's fees or punitive damages if we were to allow Richards' complaint to continue. As we will grant CATA's motion for summary judgment, CATA's contention that Richards is not entitled to attorney's fees or punitive damages is rendered moot.

## VI.  CONCLUSION

For the aforementioned reasons, the Court will grant defendant CATA's

motion for summary judgment.  (Rec. Doc. No. 18).  As such, CATA's contention

that Richards is not entitled to attorney's fees or punitive damages is rendered

moot.


s / James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BILLIE JO RICHARDS,                    :
                                       :        4:08-CV-01947
            Plaintiff,                 :
      v.                               :        (Judge McClure)
                                       :
CENTRE AREA                            :
TRANSPORTATION                         :
AUTHORITY,                             :
                                       :
            Defendant.                 :

## ORDER

January 25, 2010

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Defendant's "Motion for Summary Judgment Pursuant to F.R.C.P.

No. 56" is **GRANTED**.  (Rec. Doc. No. 18).

2.    The clerk is directed to enter final judgment in favor of defendant and

against plaintiff.

3.    The clerk is directed to close the case file.


                              __ s / James F. McClure, Jr._____
                              James F. McClure, Jr.
                              United States District Judge